# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GIDEON L. SCHWARTZ, TIMOTHY THOMPSON, MICHAEL J. RUSCA, MARK S. HAY, MICHAEL LLOYD SCHRECENGOST, JOHN JAKOB KAPINUS, and CHARLES JONES, | : : : : : : | Case No. 4:15-CV-02176 |
| Plaintiffs, | : : | (Judge Brann) |
| v. | : : : | |
| THE PENNSYLVANIA STATE UNIVERSITY, | : : : | |
| Defendant. | : | |

## MEMORANDUM

### APRIL 18, 2017

Before the Court for disposition is Defendant The Pennsylvania State University's ("Penn State") Motion to Approve Settlement of claims brought under the Fair Labor Standards Act ("FLSA") in this action. The Court will grant Penn State's Motion.

## I. BACKGROUND

On February 2, 2016, Plaintiffs Gideon L. Schwartz, Timothy L. Thompson, Michael J. Rusca, Mark S. Hay, Michael Lloyd Schrecengost, John Jakob Kapinus, and Charles Jones ("Plaintiffs") filed an Amended Complaint to recover unpaid overtime compensation, liquidated damages, attorneys' fees and costs under

1

Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).[1]  The allegations contained within the Amended Complaint are as follows.

Plaintiffs, employees within the meaning of Section 3(e)(2)(C) of the FLSA, work as Airport Attendants for Defendant Penn State.[2]  In that capacity, Plaintiffs allege that Penn State knowingly takes the benefit of their work during their meal periods and does not compensate them for the time spent for their benefit.[3]  Plaintiffs specifically state that they perform the following tasks during their meal periods:

> (1) Testing gas and jet fuel; (2) Operating fuel-service vehicles; (3) Fueling aircraft; (3) Directing incoming aircraft; (4) Taxiing aircraft; (5) Parking aircraft; (6) Cleaning aircraft; (7) Loading baggage; (8) Unloading baggage; (9) Performing lavatory services on aircraft; (10) Monitoring weather, traffic, field, and airport surface conditions; (11) Recording information in traffic logs; (12) Responding to in-flight emergencies; (13) Maintaining walks, parking lots, ramps, aprons, taxiways, and runways; (14) Maintaining and repairing vehicles and support equipment; (15) Maintaining and repairing airport equipment and facilities; (16) Inspecting equipment, runway, taxiway, lighting; (17) Deicing aircraft; (18) Testing and accepting or rejecting deliveries of supplies; (19) Observing and reporting weather conditions; (20) Logging weather information and maintaining weather systems; (21) Responding to fire or emergency incidents involving crashes or requiring rescue; (22) Fire-fighting; (23) Patrolling perimeter road, checking for security breaches, ensuring that safes, gates, and doors are locked, and aircraft secured; (24) Escorting contractors or third parties who are performing work or providing services on airport property; (25) Driving Pennsylvania State University vehicle to transport students and other personnel to and from airport or as directed by University-employed

---

[1] Am. Compl. (ECF No. 10).

[2] Am. Compl. ¶ 13, at 3.

[3] Id. ¶ 15, at 4.

<mark>2</mark>

supervisor; (26) Operating the reception desk and sales counter; (27) Greeting guests; (28) Answering questions and arranging for transportation; (29) Answering telephone; (30) Performing general housekeeping to maintain airport facilities in a clean and habitable condition; (31) Cleaning and washing aircraft; (32) Placing, retrieving, and maintaining barricades, flags, reflectors, and lighted flashers to mark obstructions and hazardous or unserviceable areas; (32) Observing wildlife and taking any required action to mitigate interference by wildlife on airport operations; (33) Monitoring in- and out-bound radio communications; and (34) Directing and assisting work of part-time personnel.[4]

Owing to these tasks performed during their meal time, Plaintiffs assert that they actually work a 42 or 42.5 hour work week. Therefore, because they are compensated for only 40 hours of work, Penn State has violated Section 7 of the FLSA, or 29 U.S.C. § 207.[5]

Defendant Penn State filed an Answer on February 16, 2016, and the parties thereafter engaged in factual discovery.[6] On April 4, 2017, Defendant Penn State filed a Motion to Approve Settlement, a supporting brief, and a Joint Declaration of both parties indicating support for this settlement.[7] Because the parties jointly request that the Court approve this settlement, this matter is ripe for disposition.

---

[4] Id. ¶ 16, at 4.

[5] Id. ¶¶ 17, 21, at 4–5.

[6] Answer (ECF No. 12); Order (ECF No. 16).

[7] ECF Nos. 17 & 18.

## II.   DISCUSSION

The FLSA was enacted for the purpose of protecting all covered workers from substandard wages and oppressive working hours.[8] Congress recognized that "due to unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce."[9] The provisions of the statute are mandatory and not subject to negotiation and bargaining between employers and employees because allowing waiver by employees or releases of employers would nullify the purposes of the act.[10]

Although the United States Court of Appeals for the Third Circuit has not addressed the issue, its district courts have taken the position stated by the Eleventh Circuit in Lynn's Food Stores, Inc. v. United States Dept. of Labor that court approval is required for proposed settlements in a FLSA lawsuit brought under 29 U.S.C. § 216(b).[11] Accordingly, this Court must scrutinize the proposed settlement of the parties and determine if it is "a fair and reasonable resolution of a

---

[8]   Barrentine v. Arkansas-Best Freight System, 450 U.S 728, 739 (1981); 29 U.S.C. § 202(a).

[9]   Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 706–07 (1945).

[10]  See Lynn's Food Stores, Inc. v. United States Dept. of Labor, 679 F.2d 1350, 1352 (11th Cir. 1982); O'Neil , 324 U.S. at 707; D.A. Schulte, Inc. v. Gangi, 328 U.S. 108 (1946).

[11]  See, e.g., Cuttic v. Crozer-Chester Med. Ctr., 868 F.Supp.2d 464 (E.D.Pa. 2012) (Robreno, J.); Morales v. PepsiCo, Inc., Civil Action No. 11-CV-6275, 2012 WL 870752 (D.N.J. Mar. 14, 2012) (Thompson, J.); Bettger v. Crossmark, Inc., Civil Action No. 13-CV-2030, 2015 WL 279754 (M.D.Pa. Jan. 22, 2015) (Conner, C.J.).

4

bona fide dispute over FLSA provisions."[12] Court review of a proposed settlement agreement therefore proceeds in two stages: first, the court assesses whether the parties' agreement is fair and reasonable to the plaintiff employee; second, it determines whether the settlement furthers or "impermissibly frustrates" implementation of the FLSA in the workplace.[13]

Having reviewed the Settlement Agreement reached by parties, I am satisfied that it is both a "fair and reasonable resolution of a bona fide dispute over FLSA provisions," and does not impermissibly frustrate implementation of the FLSA in the workplace. My reasoning is as follows.

    A.    <u>The Settlement Agreement is a Fair and Reasonable Settlement of a Bona Fide Dispute.</u>

As threshold matter, I must first address whether the proposed settlement resolves a <u>bona fide</u> factual dispute, or one in which "there is some doubt as to whether the plaintiff would succeed on the merits at trial."[14] Having reviewed the pleadings within this matter, I am satisfied that proposed settlement agreement meets that threshold. Specifically, the parties dispute, in good faith, (1) the amount of work performed by Plaintiffs during the meal periods,[15] (2) whether this work

---

[12] See <u>Lynn's Food Stores</u>, 679 F.2d at 1354; <u>Altenbach v. Lube Center, Inc.</u>, Civil Action No. 08-CV-02178, 2013 WL 74251, at *1 (M.D. Pa. Jan. 4, 2013) (Kane, J.).

[13] <u>Altenbach,</u> 2013 WL 74251, at *1.

[14] <u>Bettger</u>, 2015 WL 279754, at *4 (citing, <u>inter alia</u>, <u>Lynn's Food Stores</u>, 679 F.2d at 1354).

[15] See Answer ¶ 41, at 10.

was actually for the benefit of the Penn State,[16] and (3) whether Penn State knew or should have known of the work allegedly performed.[17]

Having found the existence of a <u>bona fide</u> dispute, the Court must next examine whether the settlement agreement represents a fair and reasonable resolution of that dispute. To make that determination, district courts have considered the factors outlined in <u>Girsh v. Jepson</u>,[18] concerning the fairness of a proposed class action settlement.[19] In <u>Girsh v. Jepson</u>, the Third Circuit set out the following nine factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[20]

Consideration of these above <u>Girsh</u> factors dictates that the terms of the settlement agreement are both fair and reasonable. First, the parties have expressed and the Court agrees that, because Penn State has put at issue whether the alleged tasks performed were for their primary benefit, continued litigation and

---

[16] <u>Id.</u> ¶ 16, at 4–5.

[17] <u>Id.</u> ¶ 29, at 7.

[18] 521 F.2d 153, 157 (3d Cir. 1975)

[19] <u>See</u>, <u>e.g.</u>, <u>Bettger</u>, 2015 WL 279754, at *7; <u>Altenbach</u>, 2013 WL 74251, at *2.

[20] <u>Girsh</u>, 521 F.2d at 157–58.

6

discovery in this case has the potential to be quite costly and complex.[21]  Second, I note that the individual employees to this suit have expressed their assent to the terms of the Settlement Agreement, and said assent has been memorialized in Joint Declaration of the parties.[22]  Third, per the Court's Order of March 17, 2016, the parties have completed factual discovery and thus are found to have an "adequate appreciation of the merits of the case before negotiating."[23]  Fourth, and again owing to the complexity of the case, there is some risk that Plaintiffs would be unable to establish liability and damages for what they allege are tasks performed for the primary benefit of Penn State.  Fifth, I find that the eighth and ninth factors — the range of both the reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation— weigh in favor of settlement approval.  Penn State has agreed to pay the total amount which Plaintiffs claim they are owed.  While Plaintiffs could recover additional damages, this settlement of full payment is unquestionably reasonable given the risks attendant in progressing the case toward trial.[24]

---

[21]  See In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 318 (3rd Cir. 1998).

[22]  ECF No. 18-3.

[23]  Craig v. Rite Aid Corp., Civil Action No. 08-CV-2317, 2013 WL 84928, at *9 (M.D.Pa. Jan. 7, 2013)(Jones, J.)(citing In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 813 (3rd Cir. 1995)).

[24]  The risk of maintaining the class throughout trial and the ability of defendants to withstand a greater judgment are not applicable factors here as there is no such putative class that may be

B. The Settlement Agreement Does Not Impermissibly Frustrate the Implementation of the FLSA in the Workplace.

I must now consider whether the terms of the settlement agreement impermissibly frustrate implementation of the FLSA in the workplace. In this analysis, I must examine both the release of claims and the confidentiality provisions of the settlement agreement.[25]

Section 2 of the settlement agreement, entitled "Limited Release of Claims," states:

> "[t]he employees hereby irrevocably and unconditionally release . . . any and all charges, complaints, claims, liabilities . . . that fall within the ambit of the Fair Labor Standards Act and the Equal Pay Act and arise from the facts of the Claim that they now have or hereinafter may have by reason of any matter occurring prior to the effective date of this Agreement."[26]

In reviewing settlement agreements, courts may "may require litigants to limit the scope of waiver and release provisions to 'claims related to the specific litigation' in order to ensure equal bargaining power between the parties."[27] Here, I find that the instant release provision is limited in scope and duration to claims arising from facts of the instant wage and hour claim which occurred prior to the date of the

---

decertified or modified at any time during the litigation, and no evidence regarding Penn State's ability to withstand a higher judgment.

[25] See Shimp v. Wildcat, LLC, Civil Action No. 15-CV-1109, 2016 WL 1584013, at *4 (M.D.Pa. Apr. 20, 2016)(Conner, C.J.) (collecting cases).

[26] ECF No. 18-2.

[27] Bettger, 2015 WL 279754, at *9 (collecting cases).

8

agreement. This release of claims is therefore properly cabined to the FLSA claim and thus does not frustrate the implementation of the FLSA.[28]

Section 6 of the settlement agreement, entitled "Confidentiality," states:

"[t]he employees agree that . . . they will not disclose the terms of this Agreement to any persons . . . The Employees may, without violating this provision, disclose to others in substance that the matter has been resolved confidentially . . . The University recognizes that confidentiality provisions in resolution of claims under the FLSA are disfavored and accordingly, if this provision is breached, the University will not apply or seek a sanction of any kind nor retaliate against any of the Employees of their representatives.[29]

Courts have generally found that that confidentiality provisions in FLSA settlement agreements frustrate the implementation of the FLSA in the workplace and should be stricken from the agreements.[30] However, unlike cases in which such provisions have been stricken, the instant confidentiality provision contains no provision allowing for employers to retaliate against employees for breach of this provision. Rather, the instant Settlement Agreement allows for Plaintiffs to disclose that the matter "has been resolved confidentially, without referencing the specific terms of the Agreement." Furthermore, the provision also states that, in

---

[28] Cf. Bettger, 2015 WL 279754, at *9 (finding a release of claims provision "inappropriately comprehensive" which precludes plaintiff from "raising *any and all* claims she may have against [defendant] arising prior to the execution date of the agreement and require her to dismiss any charges of discrimination, harassment, or retaliation currently pending with any government agency.").

[29] ECF No. 18-2.

[30] See, e.g., Brown v. TrueBlue, Inc., Civil Action No. 10-CV-00514, 2013 WL 5408575, at *3 (M.D.Pa. Sept. 25, 2013)(Kane, J.)(citing Brumley v. Camin Cargo Control, Inc., Civil Action No. 08-CV-1798, 2012 WL 300583, at *3 (D.N.J. Feb.1, 2012) (collecting cases)); Altenbach, 2013 WL 74251, at *3.

9

the event of breach by Plaintiffs, Penn State will neither seek sanctions nor retaliate against its employees. These averments within the confidentiality provision ensure that its inclusion within the settlement agreement for this case does not frustrate the implementation of the FLSA in the workplace.[31]

    C.    <u>The Parties Have Not Submitted Sufficient Information Allowing the Court to Assess the Reasonableness of Provided Attorneys' Fees.</u>

Section 16(b) of the FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."[32] Courts within the Third Circuit have predominantly used the percentage-of-recovery method, in which a fixed portion of the settlement fund is awarded to counsel, to determine a reasonable attorney's fee in wage and hour cases.[33] The factors which the court considers under the percentage-of-recovery method to evaluate the appropriateness of an attorneys' fee aware are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the

---

[31] See <u>Diclemente v. Adams Outdoor Advertising, Inc.</u>, Civil Action No. 15-CV-0596, 2016 WL 3654462, at *4 (M.D.Pa. July 8, 2016)(Mannion, J.)(approving a settlement agreement with a confidentiality provision allowing for disclosure of the case's conclusion without any allowable sanctions or retaliation for breach).

[32] 29 U.S.C. § 216(b).

[33] <u>Kraus v. PA Fit II, LLC</u>, 155 F.Supp. 3d 516, 533 (E.D.Pa. Jan. 11, 2016).

litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.[34]

These factors need not be applied in a formulaic way, and in the Court's analysis, one factor may outweigh the others.[35] The award of attorneys' fees therefore lies squarely within the discretion of the district court, and "a thorough judicial review of fee applications is required in all class action settlements."[36]

The preliminary application of the above factors weighs in favor of approving the requested attorneys' fees. First, I note that the Settlement Agreement provides for attorneys' fees of $28,558.32, which accounts for "one third (1/3) of the total consideration exchanged in order to resolve this dispute."[37] In a Joint Declaration in Support of Settlement filed by counsel for both Plaintiffs and Defendant, parties aver that such a fee is reasonable given (1) the lack of objection to the fee award by Plaintiffs, (2) the skill and efficiency of the plaintiff attorneys involved, (3) the complexity and duration of this litigation, (4) the risk of nonpayment, and (5) the amount of time that was devoted to the case by Plaintiff's counsel.[38] They further allege that this fee of roughly 33% falls right within the

---

[34] Id. (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n. 1 (3d Cir. 2000).

[35] Id.

[36] In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768, 819 (3d Cir. 1995).

[37] ECF No. 18-2, at 5.

[38] Joint Declaration ¶ 11 (ECF No. 18-2), at 18.

11

range of attorneys' fees approved by courts in similar cases.[39] Having reviewed this Declaration and the above Gunter factors, I am in agreement that the requested attorneys' fees of $28,558.32, or 1/3 of the settlement amount reached, is likely reasonable given the facts of the case.[40]

However, the Third Circuit has also suggested that it is "sensible" for district courts to "cross-check" the percentage-of-recovery calculation with a lodestar calculation.[41] This crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier."[42] To calculate the lodestar, the "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate."[43] Here, despite the comprehensive nature of the Joint Declaration, counsel failed to provide information documenting the total time expended on the case, or the reasonableness of its hourly rate. Plaintiffs are

---

[39] Id.

[40] See, e.g., Chung v. Wyndham Vacation Resorts, Civil Action No. 14-CV-00490, 2015 WL 3742187, at *3 (M.D.Pa. June 15, 2015)(Mariani, J.)(approving attorney's fees which amount to 31.75% of the total settlement amount); Crevatas v. Smith Mgmt. and Consulting, LLC, Civil Action No. 3:15-CV-2307, 2017 WL 1078174, at *5 (M.D.Pa. Mar. 22, 2017)(Mannion, J.)(approving attorney's fees which amount to 31.36% of the total settlement amount).

[41] In re Prudential Ins. America Sales Practice Litig. Agent Actions, 148 F.3d 283, 333 (3d Cir. 1998).

[42] In re AT & T Corp. Sec. Litig., 455 F.3d 160, 164 (3d Cir.2006).

[43] Blum v. Stetson, 465 U.S. 886, 888 (1984).

therefore directed to file evidence allowing for this lodestar "cross check" within fourteen (14) days of this Order.[44]

## III. CONCLUSION

Based on the above reasoning, Defendant's Motion to Approve Settlement of claims brought under the Fair Labor Standards Act ("FLSA") (ECF No. 17) is granted with the exception of the award of attorneys' fees in amount of $28,558.32. Plaintiffs are, however, directed to file evidence supporting their proposed award of attorneys' fees within fourteen (14) days of the date of this Order.

An appropriate Order follows.


BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[44] See, e.g., Brown, 2013 WL 5408575, at *3; Creed v. Benco Dental Supply Co., Civil Action No. 12-CV-1571, 2013 WL 5276109, at *6-7 (M.D.Pa. Sept. 17, 2013)(Mariani, J.).